**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

**JACK L. GIVENS** **PLAINTIFF**

**v.** **Case No. 5:13-cv-00314-KGB**

**UNION PACIFIC RAILROAD COMPANY** **DEFENDANT**

**OPINION AND ORDER**

Plaintiff Jack L. Givens brings this action against defendant Union Pacific Railroad Company ("Union Pacific") pursuant to the Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51 *et seq*. Before the Court is Union Pacific's motion to dismiss (Dkt. No. 6). Mr. Givens has not responded, and the time for filing a response has passed. For the following reasons, Union Pacific's motion to dismiss is granted in part and denied in part.

## I. Background

Mr. Givens alleges that he was injured on October 3, 2010, when the train he was operating as a conductor for Union Pacific was involved in a collision with a motor vehicle at a railroad crossing at or near Mount Pleasant, Texas (Dkt. No. 1, ¶¶ 1, 6). Mr. Givens alleges that his injuries were the result of the following acts of negligence of Union Pacific:

a. It failed to provide Plaintiff with a reasonably safe place to work;

b. It required Plaintiff to ride in the front of the locomotive where he was most exposed to danger in the event of a collision;

c. It failed to provide Plaintiff with a safe locomotive which would protect Plaintiff in the event of a collision;

d. It failed to provide adequate cushioning devices within its locomotive;

e. It failed to provide air bags, seat belts, harnesses or other means of restraint for occupants within its locomotive in case of collision;

f. It failed to install, maintain, and operate safety gates and/ or warning lights at its crossing, though such gates and/ or warning lights were practical and necessary in view of the conditions existing at such crossing;

g. It failed to cause automatic flash signals to be placed at said crossing to warn vehicular traffic of any trains that may be proceeding down the tracks though such automatic flash signals were practical and necessary in view of the conditions existing at such crossing;

h. It failed to adequately illuminate its property and right of way to advise vehicular traffic of the safe and proper thoroughfare to follow to avoid trains that may be proceeding down the tracks though such illumination was practical and necessary in view of the conditions existing on its property and right of way;

i. It failed to adequately post warning signs and directional markings to direct vehicular traffic toward the safe and proper thoroughfare to follow to avoid trains that may be proceeding down the tracks though such warning signs and directional markings were practical and necessary in view of the conditions existing on its property and right of way.

(Dkt. No. 1, ¶ 6).

In addition, Mr. Givens alleges that, in the course of more than 30 years working for Union Pacific as a conductor and trainman, he has been involved in seven other collisions at or near railroad crossing at various locations, including McGehee, Arkansas, in 1980; Little Rock, Arkansas, in 1981; Noble Lake, Arkansas, in 1982; Fulton, Arkansas, in 2001 and again at the same crossing in 2003; in Cari, Louisiana, in 2004; and Texarkana, Texas, in 2006 (*Id.*, ¶ 7). He claims that, in each collision, the vehicles were occupied and the occupants suffered injuries, including numerous fatalities (*Id.*). Mr. Givens alleges that each of these seven prior collisions also was a result of the negligence alleged in paragraph 6 of his complaint (*Id.*, ¶ 8). He claims that, prior to each of the eight collisions, he "was in the zone of danger caused by the immediate collision and had fear of sustaining physical harm from the collision(s)." (*Id.*, ¶ 9).

Mr. Givens alleges that he was first diagnosed with Post Traumatic Stress Disorder ("PTSD") and depression after October 5, 2010, as a result of these incidents (*Id.*, ¶ 10). He

asserts that he has suffered fear of physical harm, psychological and emotional injury, mental anguish, and anxiety as a result of the alleged acts of negligence and that he will continue to suffer psychological and emotional injury, mental anguish, and anxiety in the future (*Id.*, ¶ 11). Mr. Givens alleges he has suffered injuries including stress, anxiety, depression, panic disorder, panic symptoms, and PTSD (*Id.*). Mr. Givens further claims that "[i]n the event Plaintiff did have any infirmities to the aforementioned parts of his body of which he was not aware, said conditions were aggravated, exacerbated and caused to become symptomatic by the emotional trauma sustained by Plaintiff during the course his work." (Dkt. No. 1, ¶ 12).

## II. Legal Standard

Union Pacific moves to dismiss Mr. Givens's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. To survive a motion to dismiss under Rule 12(b)(6), a complaint must satisfy the pleading requirement of Rule 8(a)(2), which requires that a complaint present "a short and plain statement of the claim that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted). However, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a 'sheer possibility.'" *Braden*, 588 F.3d at 594 (quoting *Iqbal*, 556 U.S. at 678). "The plausibility standard is not a probability requirement. Thus, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." *Id.* (internal quotation marks omitted).

In applying this standard, "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden*, 588 F.3d at 594 (citing *Vila v. Inter–Am. Inv. Corp.*, 570 F.3d 274, 285 (D.C. Cir. 2009) (factual allegations should be "viewed in their totality")). "Ultimately, evaluation of a complaint upon a motion to dismiss is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

**III. Discussion**

Mr. Givens brings this action pursuant to the FELA, which was enacted in 1908 and "provides railroad employees with a federal cause of action for injuries 'resulting in whole or in part from the negligence' of the railroad." *Cowden v. BNSF Ry. Co.*, 690 F.3d 884, 889 (8th Cir. 2012) (quoting 45 U.S.C. § 51). "The FELA imposes upon employers a continuous duty to provide a reasonably safe place to work." *Francisco v. Burlington N. R.R. Co.*, 204 F.3d 787, 789 (8th Cir. 2000) (internal quotation marks omitted). "Cognizant of the physical dangers of railroading that resulted in the death or maiming of thousands of workers every year, Congress crafted a federal remedy that shifted part of the 'human overhead' of doing business from employees to their employers." *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 542 (1994)

(quoting *Tiller v. Atl. Coast Line R. Co.*, 318 U.S. 54, 58 (1943)). "'In order to further FELA's humanitarian purposes,' Congress removed various common-law obstacles to an employee's recovery, and courts have 'liberally construed FELA to further Congress'[s] remedial goal.'" *Cowden*, 690 F.3d at 889–90 (citation omitted) (quoting *Gottshall*, 512 U.S. at 542-43).

Union Pacific moves for dismissal as to Mr. Givens's claim based on the October 2010 incident by addressing each allegation of negligence in paragraph 6 of Mr. Givens's complaint, arguing that his allegations either fail to satisfy the Rule 8 pleading standard or fail to state a cognizable claim for which relief can be granted under the FELA. Union Pacific also moves to dismiss Mr. Givens's claims regarding the seven prior accidents as time-barred. The Court will address each in turn.

**A. Failure to Provide Reasonably Safe Place to Work**

Union Pacific argues that Mr. Givens's allegation in paragraph 6(a) that Union Pacific "failed to provide Plaintiff with a reasonably safe place to work" does not contain sufficient factual matter to satisfy Rule 8(a)'s pleading standard because it does not state specifically how Union Pacific failed to provide a reasonably safe place to work. Union Pacific's argument misapplies the pleading standard by asking the Court to view paragraph 6(a) in isolation. The sufficiency of paragraph 6(a) depends on viewing the complaint as a whole. *Braden*, 588 F.3d at 594. The Court denies Union Pacific's motion to dismiss as to this allegation.

**B. Locomotive Safety Features and Federal Preclusion**

In paragraphs 6(b) through 6(e), Mr. Givens alleges negligence regarding the safety features of the locomotive. Union Pacific argues that these claims of negligence are precluded by the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20101 *et seq.*

In 1970, Congress enacted the Federal Railroad Safety Act ("FRSA") "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C.A. § 20101. The FRSA grants general authority to the Secretary of Transportation to "prescribe regulations and issue orders for every area of railroad safety supplementing laws and regulations in effect on October 16, 1970." 49 U.S.C. § 20103(a). The Secretary has delegated this authority to the Federal Railroad Administration ("FRA"). *Cowden*, 690 F.3d at 890 n.4 (citing *Union Pac. R.R. Co. v. Cal. Pub. Utils. Comm'n*, 346 F.3d 851, 858 n. 8 (9th Cir. 2003)). The FRSA seeks national uniformity, stating that "[l]aws, regulations, and orders related to safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable." 49 U.S.C. § 20106(a). "To maintain this uniformity, the FRSA contains an express preemption clause." *Cowden*, 690 F.3d at 890. "This preemption clause allows for some coordination between state and federal regulation," *id.*, and provides that "[a] State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation . . . prescribes a regulation or issues an order covering the subject matter of the State requirement." 49 U.S.C. § 20106(a)(2).

In *CSX Transportation, Inc. v. Easterwood*, 507 U.S. 658 (1993), the Supreme Court clarified what it means to cover "the Subject of the State requirement." The Court explained that, where an FRSA regulation "substantially subsumes" the subject matter of a state-law negligence claim, the claim is preempted. *Id.* at 664.

Several courts have held that "the uniformity demanded by the FRSA 'can be achieved only if [federal rail safety regulations] are applied similarly to a FELA plaintiff's negligence claim and a non-railroad-employee plaintiff's state law negligence claim.'" *Nickels v. Grand Trunk W. R.R., Inc.*, 560 F.3d 426, 430 (6th Cir. 2009) (quoting *Lane v. R.A. Sims, Jr., Inc.*, 241

F.3d 439, 443 (5th Cir. 2001), and citing *Waymire v. Norfolk & W. Ry. Co.*, 218 F.3d 773, 776 (7th Cir. 2000)). This Court has followed this preclusion analysis. *See, e.g.*, *Lybrand v. Union Pac. R. Co.*, 2012 WL 1436690, at *2 (E.D. Ark. Apr. 25, 2012) (applying preclusion analysis but finding that claims regarding the alleged failure to provide and maintain safe walkways were not precluded by the FRSA regulations regarding ballast and track conditions); *Davis v. Union Pac. R.R. Co.*, 598 F. Supp. 2d 955, 959–60 (E.D. Ark. 2009) (same); *Dickerson v. Staten Trucking, Inc.*, 428 F. Supp. 2d 909, 913–14 (E.D. Ark. 2006) (finding claims regarding "crashworthiness" of locomotive precluded by FRSA regulations on locomotive cabs).

In *Cowden*, the Eighth Circuit expressed its doubt as to this preclusion analysis but stopped short of rejecting it. Noting that the FRSA and its regulations "were adopted to address the patchwork effect of each state applying its own set of regulations," the Eighth Circuit stated that, "[t]o this extent, it is not clear how negligence claims brought under the federal common law threaten the uniformity sought by the FRSA." 690 F.3d at 891 (citation omitted). However, the Eighth Circuit recognized that the Supreme Court has thus far declined to review the other circuits' application of this preclusion analysis and declined to create a circuit split on the issue. *Id* at 892. Instead, the Eighth Circuit reversed and remanded, holding that this issue was not properly raised before the district court but implying that the defendant possibly could show preclusion on remand. *Id.* at 892–94. Accordingly, federal preclusion under the FRSA is, for the time being, viable in the Eighth Circuit.

Union Pacific argues that Mr. Givens's allegations in paragraphs 6(b) through 6(e) are precluded by the FRSA's regulation pertaining to cabs and cab equipment found at 49 C.F.R. § 229.119. Union Pacific relies on *Dickerson*, 428 F. Supp. 2d 909, a case in which Union Pacific was a defendant and one of its engineers sought recovery under FELA and alleged similar claims

of negligence. Specifically, the plaintiff alleged that Union Pacific failed to install certain equipment and devices in its locomotive, such as physical restraints, safety belts, and interior cushioning, and that Union Pacific failed to provide "a reasonably safe and crashworthy locomotive." *Id.* at 911. The court considered these claims collectively as challenging the "crashworthiness" of the locomotive and found them precluded by 49 C.F.R. § 229.119. After reviewing the requirements of § 229.110, the *Dickerson* court stated that "[i]t is clear that there are no requirements for installation of safety restraints or locomotive floor padding." 428 F. Supp. 2d at 913. The court further found that safety restraints and floor padding are not "integral and essential" components of a locomotive such that the failure to install those devices could establish FELA liability through a violation of the Locomotive Inspection Act ("LIA"), 49 U.S.C. § 20701. *Dickerson*, 428 F. Supp. 2d at 913.

The Court agrees with the reasoning of *Dickerson*. The Secretary has promulgated regulations at 49 C.F.R. § 229.119 that cover the subject matter of locomotive cab safety requirements. There are no requirements for cushioning devices. Although § 229.119(a) requires that cab seats be securely mounted and braced, there are no requirements for air bags, seat belts, harnesses, or other means of restraint, and these safety devices are not integral and essential to the operation of a locomotive. *Dickerson*, 428 F. Supp. 2d at 913. Mr. Givens's FELA claim is precluded insofar as he seeks to recover for Union Pacific's alleged negligence in failing to install cushioning and safety restraints. However, this only addresses paragraphs 6(d) and 6(e).

Union Pacific's argument as to preclusion does not specifically address Mr. Givens's allegation in paragraph 6(b) that Union Pacific was negligent in requiring him to ride in the front of the locomotive or his allegation in paragraph 6(c) that Union Pacific failed to provide him

with a safe locomotive that would protect him in the event of a collision. Union Pacific only argues preclusion under 49 C.F.R. § 229.119, which, according to Union Pacific, "specifically sets forth what is required in a locomotive cab" (Dkt. No. 7, at 3). Union Pacific does not contend that § 229.119 pertains to locomotive configuration and cab location and does not cite any regulation on that issue. Likewise, Union Pacific does not contend that § 229.119 governs every aspect of locomotive safety. The Eighth Circuit in *Cowden* stressed that, like preemption, the burden is on the party arguing preclusion under the FRSA. Union Pacific has not carried its burden to demonstrate preclusion as to Mr. Givens's allegations in paragraphs 6(b) and (c) of his complaint.

Apart from preclusion, Union Pacific argues without elaboration that paragraphs 6(b) and 6(c) fail to contain sufficient factual matter to state a claim that is plausible on its face. The Court disagrees in part. Paragraph 6(b) gives fair notice, and Union Pacific has not demonstrated that the claim is precluded by the FRSA. However, paragraph 6(c) which alleges only that Union Pacific failed to provide a safe locomotive that would protect Mr. Givens in the event of a collision does not give fair notice, especially in the light of the preclusion analysis that applies to such claims. Mr. Givens has not alleged sufficient factual matter to state a claim in paragraph 6(c) that provides fair notice to Union Pacific or that is plausible on its face. For these reasons, the Court denies Union Pacific's motion to dismiss as to paragraph 6(b) and grants Union Pacific's motion as to paragraph 6(c).

For the foregoing reasons, the Court grants Union Pacific's motion to dismiss as to Mr. Givens's allegations in paragraphs 6(c), 6(d), and 6(e) of his complaint, and the Court denies without prejudice Union Pacific's motion to dismiss as to Mr. Givens's allegations in paragraphs 6(b).

**C. Safety of the Railroad Crossing**

As to Mr. Givens's allegations in paragraphs 6(f) through 6(i) regarding Union Pacific's alleged failure to provide safety gates, warnings lights, flash signals, and warning signs at the railroad crossing at issue, Union Pacific states without support in the record that the grade crossing in Mount Pleasant, Texas, was equipped with flashing lights and gates and then summarily argues with no citation to authority that it "has no duty to provide additional warning or directional markings." (Dkt. No. 7, at 5). Union Pacific cites no support for either of these statements. Accordingly, Union Pacific's motion to dismiss as to Mr. Givens's allegations in paragraphs 6(f) through 6(i) of his complaint is denied without prejudice. Union Pacific may renew its motion to dismiss as to these allegations if it wishes to elaborate on and provide legal support for its argument.

**D. The Seven Prior Accidents**

Union Pacific moves to dismiss as time-barred Mr. Givens's claims that his PTSD and depression were caused by seven prior grade-crossing accidents from 1980 to 2006. No action may be maintained under the FELA unless it was commenced within three years from the day the cause of action accrues. 45 U.S.C. § 56. Generally speaking, the date a FELA cause of action accrues depends on when the injury manifests itself. *See Urie v. Thompson*, 337 U.S. 163, 169–70 (1949); *United States v. Kubrick*, 444 U.S. 111, 121 n.7 (1979). Under the so-called "discovery rule," a plaintiff's cause of action does not accrue until the employee "is aware or should be aware of his condition." *Paris v. Union Pac. R. Co.*, 2006 WL 1520575, at *3 (E.D. Ark. May 30, 2006) (quoting *Fletcher v. Union Pac. R. Co.*, 621 F.2d 902, 906 (8th Cir. 1980)). "In cases involving traumatic injury, when the symptoms are immediately manifested so that the employee is aware of the event causing the injury, the cause of action accrues upon the

occurrence of the injury, regardless of whether the full extent of the disability is known at that time." *Fletcher*, 621 F.2d at 906. "By the same token, with industrial diseases, where the symptoms are not immediately manifested, the cause of action does not accrue until the employee is aware or should be aware of his condition." *Id.*

Mr. Givens's complaint states he was first diagnosed with PTSD and depression after October 5, 2010. In that regard, it appears that Mr. Givens contends he did not know of these alleged injuries before the time of his diagnosis. Union Pacific's argument for dismissal addresses only the date of the accidents. Union Pacific does not address whether the discovery rule may apply such that Mr. Givens's claims as to these incidents may be timely. Accordingly, and for these reasons, the Court denies without prejudice Union Pacific's motion to dismiss as to the seven prior accidents.

* * *

Union Pacific's motion to dismiss is granted in part and denied in part (Dkt. No. 6). The motion is granted as to Mr. Givens's allegations of negligence in paragraphs 6(d) and 6(e) of his complaint regarding locomotive cab safety features, and those claims are dismissed. The motion is granted based on pleading sufficiency standards as to paragraph 6(c). The motion is denied without prejudice in all other respects.

SO ORDERED this the 19th day of June, 2014.

Kristine G. Baker
Kristine G. Baker
United States District Judge